IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYRIK GALES<br>200 Overbrook Run<br>Milford, PA 18337<br><br>    Plaintiff,<br><br>  v.<br><br>ASCEND WELLNESS HOLDINGS, INC.<br>1411 Broadway, 16th Floor<br>New York, NY 10018<br>    and<br>NJ MGMT GRP LLC<br>24 Munsonhurst Road<br>Franklin, NJ 07416<br><br>    Defendants. | CIVIL ACTION<br><br>NO.: _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Tyrik Gales (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Ascend Wellness Holdings, Inc. and NJ MGMT GRP LLC (hereinafter collectively referred to as "Defendants") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), the New Jersey Family Leave Act ("NJ FLA"), and the New Jersey Law against Discrimination ("NJ LAD"). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. Plaintiff resides in and is a citizen of Pennsylvania.

3. Upon information and belief, Ascend Wellness Holdings, Inc. is incorporated under the laws of New York with headquarters and/or principal place of business in same, rendering it a citizen of New York.

4. Upon information and belief, NJ MGMT GRP LLC is incorporated under the laws of New York with headquarters and/or principal places of business in New York and New Jersey.

5. This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania, and Defendants are citizens of New York and New Jersey, and the amount in controversy exceeds $75,000.

6. This action is also being initiated pursuant to federal laws (Title VI, Section 1981, and the FMLA) and therefore, the United States District Court for the District of New Jersey also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

7. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

8. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

9. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## **PARTIES**

10. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

11. Plaintiff is an adult who resides at the above-captioned address.

12. Ascend Wellness Holdings, LLC is a New York corporation engaged in the cannabis industry, with cultivation facilities in several states within the United States (including New Jersey), with headquarters located at the above-captioned address.

13. NJ MGMT GRP LLC, a subsidiary of Ascend Wellness Holdings, LLC, is a New York Corporation, engaged in the cannabis industry, with a cultivation facility located at the above-captioned address.   Plaintiff was hired through and worked out of this address.

14. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

15. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

16. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

17. Plaintiff is a black (African-American) male.

18. Plaintiff was hired by Defendants' predecessor company, Greenleaf Compassion Centers, in or about 2018 as an Assistant Manager.

19. Defendants acquired Greenleaf Compassion Centers, in or about September of 2020, and Defendants retained Plaintiff in his leadership position.

20. At all relevant times herein, Plaintiff worked from Defendants' Franklin, New Jersey cannabis cultivation and manufacturing facility.

21. Throughout his tenure with Defendants, Plaintiff was a hard-working employee who performed his job well for Defendants, being promoted to Mother Room/Propagations Supervisor in or about March of 2021.

22. Plaintiff was well-thought of by management, providing valuable input for facility processes, until the arrival of a newly hired Director of Cultivation, Mike Silberman (Caucasian, hereinafter "Silberman"), in or about April of 2022.

23. Plaintiff is one of only two black supervisors within Defendants' Franklin, NJ location.

24. Upon Plaintiff's beliefs and personal observations, from the onset of his employment with Defendants, Silberman exhibited a clear preference for Caucasian and/or non-black or non-minority employees, subjecting Plaintiff and others to hostility and animosity because

of their race. By way of example, but not intended to be an exhaustive list, unlike Plaintiff's Caucasian and/or non-black co-workers;

    a. Silberman treated Plaintiff and other black and/or minority employees in a rude and demeaning manner and regularly talked down to or dismissed them;

    b. Immediately after his hire, Silberman terminated several black employees for no discernible and/or insignificant reasons;

    c. When asked by one of Plaintiff's direct reports why Silberman left his prior place of employment, he replied that he left because of the company "culture" as he didn't like "the black and the spic," who were running the company, but then mockingly stated, "I mean Hispanic";

    d. Silberman selectively enforced policies against Plaintiff and other minority employees; and

    e. Silberman suddenly removed Plaintiff from "table talks" and other meetings within the company, and he was not permitted to provide any input as to processes or other company protocols.

25. Plaintiff did his best to ignore the above instances of discrimination and disparate treatment, continuing to perform his job well, leading up to his approved leave for the birth of his son, beginning on or about April 15, 2022.

26. Throughout Plaintiff's very brief paternity leave, he regularly kept in contact with management, Human Resources ("HR"), and his direct reports, regarding the status of his leave, including his anticipated return to work date.

27. Notwithstanding the same, Defendants' management regularly and consistently pressed Plaintiff about when he would be returning to work.

28. As a result of the pressure from management, Plaintiff returned to work from his paternity leave 5 days earlier than anticipated, on or about May 5, 2022, to assist Silberman with adjustments due to the new change of command.

29. Notably, despite that Plaintiff had notified Defendants of his need for leave for the birth of his son several weeks earlier, Plaintiff was never informed of his eligibility or rights under the Family Medical and Leave Act ("FMLA"), nor was such leave time designated as FMLA-qualifying leave.

30. Plaintiff returned from FMLA-qualifying leave for the birth of his son on or about May 5, 2022, and immediately hit the ground running and getting his bearings regarding new processes, including the implementation of third-party testing by Defendants.

31. Accordingly, on or about May 6, 2022, Plaintiff reached out Silberman to inquire whether he still planned to do in-house testing given the addition of third-party testing. Silberman replied that Defendants would continue to do so and directed Plaintiff to ensure that they just maintain a good in-house chain of command and check in routinely with compliance.

32. Thereafter, Plaintiff checked in with Compliance Director, Alec Benjamin (African-American, hereinafter "Benjamin") who advised him to just make sure that the Post-Harvest team had accurate dates and labels in all samples they provided.

33. Plaintiff then ran into Post-Harvest Supervisor, Tyler Dowd (Caucasian, hereinafter "Dowd"), informed him of the continued in-house testing, and asked if he had any samples from the newest batch for testing, as Plaintiff had just returned from leave for the birth of his son.

34. Plaintiff's aforesaid conversation with Dowd was cordial, then both parties went their separate ways.

35. However, not even 20 minutes after his brief conversation with Dowd, Plaintiff was

called into a meeting with Silberman and HR and advised that he had allegedly requested samples under the authority General Manager, Jeff Armstrong (Caucasian, hereinafter "Armstrong"), and that by doing so he had improperly "used a higher authority" to "get something [he] wanted," and by doing so was "throwing [his] weight around." This was entirely untrue, as Plaintiff had never even mentioned Armstrong to Dowd and had no need to "throw [his] weight around."

36. Plaintiff was then immediately suspended pending an investigation, which made entirely no sense for a request for a testing sample that was in Plaintiff's purview as a supervisor.[1]

37. Thereafter following over a 1½ week suspension, Plaintiff requested the ability to return to the facility to retrieve some personal belongings he needed.

38. In response to Plaintiff's request to retrieve some personal belongings during his aforesaid suspension, Plaintiff was informed by HR that he could come to pick them up on or about May 18, 2022. However, when Plaintiff arrived at the facility, he was ambushed by both HR representative, Hope Damiecki (Caucasian, hereinafter "Damiecki") and an investigator named Jeff Thompson (Caucasian, hereinafter "Thompson"), and advised for the first time that over 250 grams of cannabis product had gone missing from the facility post-harvest.

39. Plaintiff was then informed that he had purportedly been suspended over the missing product because Defendants alleged that product had been found missing around the time Plaintiff took FMLA-qualifying leave for the birth of his son.

40. During this same meeting on or about May 18, 2022, Damiecki and Thompson asked Plaintiff detailed questions about his procedure and chain of command, for which he offered to provide documentation, but Damiecki and Thompson refused. Instead, Plaintiff was treated as

---

[1] Plaintiff had routinely been involved in testing samples for Defendants as far back as Harvest 28. In fact, Plaintiff routinely corresponded with Vice President of Cultivation Technical, Michael Towey (hereinafter "Towey"), General Manager, Jeff Armstrong (hereinafter "Armstrong"), and Cultivation Manager, Josh Rivas (hereinafter "Rivas") regarding testing scores.

7

if he was a criminal, with Damiecki rolling her eyes at Plaintiff's answers, huffing, and acting like it was a foregone conclusion he must have taken the product because of his race (*i.e.,* that Plaintiff was black and must be a drug dealer based on the amount of cannabis product missing).

41. Plaintiff was then abruptly terminated that same day, on or about May 18, 2022.

42. There is no doubt that Plaintiff's race was a motivating/determinative factor in his termination, because (1) Plaintiff had been a stellar employee for Defendant for several years without being provided any discipline or issues regarding chain of command/procedures; (2) despite that Plaintiff was one of the furthest removed employees from the harvest and Post-Harvest process (most of which employees were Caucasian), Plaintiff was the only employee suspended and/or hostilely questioned regarding the missing product – simply because of his race and/or for taking protected FMLA leave (which was referenced on multiple occasions during the interrogation); (3) the missing cannabis was most likely a reporting error as it would have been impossible to leave the facility with that large an amount of cannabis, as all employees were prevented from bringing any bags, backpacks, containers, etc. into the facility, for just this reason, and leaving with that large an amount would have been witnessed by other employees; and (4) Plaintiff was informed by Defendants' management that they needed to find "someone" accountable to keep the state from penalizing them.

43. Plaintiff believes and therefore avers that he was terminated because of his race and for exercises his rights under the FMLA.

**COUNT I**
**Violations of 42 U.S.C. Section 1981**
**([1] Race Discrimination & [2] Hostile Work Environment)**
**-Against Both Defendants-**

44. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45. During Plaintiff's employment with Defendants, he was subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline, and demeaning and/or derogatory treatment because of his race.

46. Plaintiff was ultimately terminated on or about March 18, 2022, for completely pretextual reasons.

47. Plaintiff believes and therefore avers that his race was a motivating/determinative factor in his termination from Defendants.

48. These actions as aforesaid constitute unlawful discrimination and a hostile work environment under Section 1981.

## COUNT II
### Violations of Title VII of the Civil Rights Act of 1964 ("Tile VII")
([1] Race Discrimination & [2] Hostile Work Environment)
-Against Both Defendants-

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. During Plaintiff's employment with Defendants, he was subjected to discrimination and a hostile work environment through disparate treatment, pretextual discipline, and demeaning and/or derogatory treatment because of his race.

51. Plaintiff was ultimately terminated on or about March 18, 2022, for completely pretextual reasons.

52. Plaintiff believes and therefore avers that his race was a motivating/determinative factor in his termination from Defendants.

53. These actions as aforesaid constitute unlawful discrimination and a hostile work environment under Title VII.

## COUNT III
### Violations of the New Jersey Law against Discrimination ("NJ LAD")
([1] Race Discrimination and [2] Hostile Work Environment)
-Against Both Defendants-

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. Plaintiff reasserts each and every allegation from Count I, as such actions in this case constitute identical violations of the NJ LAD.

## COUNT IV
### Violations of the Family and Medical Leave Act ("FMLA")
(Interference & Retaliation)
-Against Both Defendants-

56. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

57. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

58. Plaintiff requested leave from Defendants, his employers, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

59. Plaintiff had at least 1,250 hours of service with Defendants during his last full year of employment.

60. Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

61. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

62. Plaintiff was terminated in close proximity to his requests for/utilization of block FMLA leave.

63. Defendants committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) failing to inform Plaintiff of his individualized FMLA rights regarding his FMLA-qualifying block leave for the birth of his son, which constitutes a failure to follow proper notice, designation, and information regulations of the FMLA; (4) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; (5) engaging in conduct which discouraged Plaintiff from exercising his FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave; and (6) failing to designate Plaintiff's block leave following the birth of his son in or about April of 2022 as FMLA-qualifying or FMLA protected leave.

64. These actions as aforesaid constitute violations of the FMLA.

## COUNT V
### Violations of the New Jersey Family Leave Act (NJ FLA)
**(Retaliation & Interference)**
**-Against Both Defendants-**

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. Plaintiff was an eligible employee under the definitional terms of the NJ FLA, N.J.S.A. § 34:11B-3(e).

67. Plaintiff requested leave for the birth of his son from Defendants, his employers, with whom he had been employed for at least twelve months pursuant to the requirements of N.J.S.A. § 34:11B-3(e).

11

68. Plaintiff had at least 1,000 hours of service with Defendants during his last full year of employment pursuant to the requirements of N.J.S.A. § 34:11B-3(e).

69. Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to N.J.S.A. § 34:11B-3(f)(3).

70. Plaintiff was entitled to receive leave pursuant to N.J.S.A. § 34:11B-4 for a total of twelve (12) work weeks of leave on a block or intermittent basis.

71. Plaintiff's block leave for the birth of his son from on or about March 15, 2022, until on or about May 5, 2022, constituted NJ FLA-qualifying leave.

72. Defendant committed interference and retaliation violations of the NJ FLA by: (1) terminating Plaintiff for requesting and/or exercising his NJ FLA rights and/or for taking NJ FLA-qualifying leave for the birth of his son; (2) considering Plaintiff's NJ FLA leave needs in making the decision to terminate him; (3) failing to inform Plaintiff of his individualized NJ FLA rights regarding his NJ FLA-qualifying block leave for the birth of his son, which constitutes a failure to follow proper notice, designation, and information regulations of the NJ FLA; (4) terminating Plaintiff to intimidate him and/or prevent him from taking NJ FLA-qualifying leave in the future; (5) engaging in conduct which discouraged Plaintiff from exercising his NJ FLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take NJ FLA leave; and (6) failing to designate Plaintiff's block leave following the birth of his son in or about April of 2022 as NJ FLA-qualifying or NJ FLA- protected leave.

73. These actions as aforesaid constitute violations of the NJ FLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

  A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

  B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

  C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

  D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

  F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: March 22, 2023